```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                     MIDDLE DIVISION

LISA ANN HANES DAVIS,        }
                             }
     Plaintiff,              }
                             }      CIVIL ACTION NO.
v.                           }      04-AR-3060-M
                             }
CINGULAR WIRELESS, LLC,      }
                             }
     Defendant.              }
```

**MEMORANDUM OPINION**

Before this court is the motion for summary judgment of defendant, Cingular Wireless, LLC ("Cingular"). Plaintiff, Lisa Hanes Davis ("Hanes Davis"), is suing Cingular on Alabama state law claims of invasion of privacy, negligent hiring, training, and supervision, and breach of contract arising from an identity theft allegedly perpetrated by a former Cingular employee with a similar name, Lisa Lynn Davis ("Lynn Davis"). For the reasons that follow, summary judgment is due to be GRANTED IN PART and DENIED IN PART.

*Summary Judgment Facts*[1]

On August 14, 2001, Hanes Davis entered into a two year

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, the following statement of facts includes both undisputed facts and the facts according to the plaintiff's evidence, where there is a dispute.

contract for cell phone service with Cingular.  In January 2002, she cancelled her contract because she relocated to a community without a Cingular cell tower.

On April 2, 2003, a fraudulent Cingular wireless account was opened in Nashville by Lynn Davis in the name of an apparently fictitious "Lisa Y. Davis," using the address of Lynn Davis and the Social Security number of Hanes Davis.  This account was activated in a Cingular retail store by a Cingular retail employee named Ricky Gongwer ("Gongwer").  Lynn Davis apparently purchased a variety of other goods and services from various sources using Hanes Davis's Social Security number and other confidential information.

On April 28, 2003, after the account was flagged internally by Cingular employees, Hanes Davis received a phone call from Linda Boyd ("Boyd"), a Cingular Loss Prevention Analyst.  Boyd asked Hanes Davis whether she had opened the Nashville Cingular account, and Hanes Davis informed Boyd that she had not.  Boyd gave her the names of credit reporting bureaus to contact regarding what was at that point a suspected identity theft.  As part of an internal investigation, Cingular's Regional Security Director, W.B. Bragg ("Bragg"), interviewed Lynn Davis on June 3, 2003.  Lynn Davis admitted to fraudulently opening the Nashville account using Hanes Davis's information.  That same day, Cingular terminated Lynn Davis.  After the completion of the internal

investigation, Hanes Davis received a call from Bragg in which he informed her that the investigation was complete.

Lynn Davis had been an employee of Cingular since October 29, 2001, when she started in the Johnson City, Tennessee call center.  In April of 2003, she moved to the Nashville call center.  In September of 2001, prior to commencing employment, Lynn Davis had filled out an application for employment.  In the "Background - Criminal/Driving" portion of the application, she had noted a January 5, 1992 incident in Scott County, VA.  She identified the offense as "misuse of government funds," although she stated she was not arrested for this offense and that the situation was resolved when she reimbursed the funds in full.  She also checked "yes" to a box asking

> Are you awaiting trial for or have you ever been convicted of a crime, pleaded or been found guilty of a crime, paid a fine in connection with the commission of a crime, or entered a plea of nolo contendere (no contest) in response to a criminal charge, even if there was no formal finding of guilt or if your record was sealed by the court?  Your answer to these questions will be checked against local, state, and federal records.  The fact that you are awaiting trial or have a record of conviction will not necessarily bar you from employment.

On September 27, 2001, she was offered a position, conditioned on her passing a background check.  On October 5, Cingular asked HireRight, Inc. ("HireRight"), to perform a criminal and employment background investigation on Lynn Davis.  The search turned up no criminal convictions, but it was limited to her two most recent counties of residence in Tennessee and to

3

the previous seven years, and thus did not include the 1992 offense in Scott County, VA.

After commencing employment, Lynn Davis received training on the Cingular Business Code of Conduct, which contains information on protecting confidential customer information and intellectual property.  She also completed a training course entitled "Protection of Proprietary Information," which included protection of Social Security numbers, birthdays, names and addresses.  In addition, she signed an "Employee Agreement Regarding Intellectual Property and Nonsolicitation of Employees" in which she agreed not to disclose any proprietary information during or after the course of her employment.

### *Analysis*

*Invasion of Privacy*

Hanes Davis sues Cingular for invasion of privacy.  To the extent Hanes Davis claims that her privacy was invaded by Lynn Davis, the only mechanism by which Cingular can be found liable is *respondeat superior*.  In Alabama, "an employer is liable for the torts of an employee (1) if the employee was acting within the line and scope of his employment or (2) if the employer ratified, confirmed, or adopted the unauthorized wrongful conduct of the employee."  *Sparks v. Regional Medical Center Bd.*, 792 F. Supp. 735, 748 (N.D. Ala. 1992) (citing *Moman v. Gregerson's*

*Foods, Inc.*, 570 So. 2d 1215, 1216 (Ala. 1990)).

Actions committed with "wholly personal" motives are not within the line and scope of employment. *Sparks*, 792 F. Supp. at 748 (internal quotation omitted). Although Lynn Davis's motives in committing the alleged identity theft were most likely pecuniary, the court cannot know them with certainty. However, there is certainly nothing in the record that would allow a reasonable jury to conclude that her motives were anything but personal. Moreover, the Alabama Supreme Court has repeatedly shown its reluctance to impose *respondeat superior* liability for the criminal acts of third parties. *E.g., Hargrove v. Tree of Life Christian Daycare Center*, 699 So. 2d 1242, 1245-47 (Ala. 1997); *Copeland v. Samford Univ.*, 686 So. 2d 190, 195-96 (Ala. 1996). Identity theft is a criminal act, and it was clearly not in the line and scope of Lynn Davis's employment. In addition, there is no evidence that Cingular knew or had reason to know that Lynn Davis was going to engage in identity theft.

Moreover, there is simply no evidence indicating that Cingular ratified, confirmed or adopted Lynn Davis's actions. Rather, the record shows that Cingular fired Lynn Davis, cancelled the fraudulent account, and informed Hanes Davis of the account's existence shortly after the identity theft was discovered. For these reasons, Cingular cannot be held vicariously liable for any invasion of privacy allegedly

committed by Lynn Davis.

Though it is difficult to discern from Hanes Davis's complaint and brief, Hanes Davis appears to also claim that Cingular is liable for an invasion of privacy committed by Gongwer, the Cingular retail store employee who activated the fraudulent account for Lynn Davis.  The only definition of invasion of privacy that might apply to Gongwer's conduct is the "appropriation of some element of the plaintiff's personality for a commercial use."[2]  *Johnson v. Corporate Special Servs., Inc.*, 602 So. 2d 385, 387 (Ala. 1992).  There is little or no evidence suggesting that Gongwer somehow misappropriated Hanes Davis's information, and there is simply nothing in the record to indicate that Gongwer did so for commercial purposes.  On the evidence before this court, no reasonable jury could find that Gongwer's conduct constituted an invasion of privacy.  For these reasons, summary judgment is due to be granted on the invasion of privacy claim.

*Negligent Hiring, Training and Supervision*

To make out a *prima facie* case of negligent hiring, training

---

[2] The "wrongful intrusion" invasion of privacy prong cannot apply here because "a wrongful-intrusion claim cannot be based upon information voluntarily given to the defendant by the plaintiffs or upon the defendant's receipt of information already known to others."  *Johnson v. Stewart*, 854 So. 2d 544, 549-550 (Ala. 2002) (holding that a physician's disclosure of his former partner's Social Security number to a private investigator did not constitute a wrongful intrusion for invasion of privacy purposes).

or supervision, a plaintiff must

> affirmatively [show] that had the master exercised due and proper diligence, the master would have learned of the incompetency. This may be done by showing specific acts of incompetency and showing that they were brought to the knowledge of the master, or by showing them to be of such a nature, character, and frequency that the master, in the exercise of due care, must have had notice of them.

*Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889 (Ala. 1995).

Before hiring Lynn Davis, Cingular retained HireRight, Inc. ("HireRight") to do a background check, including an employment history and criminal record check. The criminal record portion of the HireRight search found no felony or misdemeanor convictions within the past seven years in the two counties in which Lynn Davis had most recently resided.

Hanes Davis cites two pieces of evidence to show that Cingular was aware, or should have been aware, of Lynn Davis's incompetence. First, under the criminal background portion of her employment application, Lynn Davis checked a box indicating that she had a criminal history and listed misuse of government funds in Virginia in 1992. Second, Hanes Davis's deposition testimony and statements by her attorney indicate that she learned from a police officer that, prior to commencing employment with Cingular, Lynn Davis had been arrested in Virginia for "some sort of fraud." It is unclear whether this supposed arrest is for the same offense described in Lynn Davis's

employment application, but it is undisputed that it could not have been discovered by the limited HireRight background check. This court has grave concerns about the admissibility of the statements by Hanes Davis and her lawyer describing the alleged arrest. Although Hanes Davis's brief refers to Lynn Davis's "criminal background," it does not discuss the alleged arrest with any greater specificity, nor does Hanes Davis provide any documentation of an arrest elsewhere in the record.

But even disregarding entirely Hanes Davis's testimony about the alleged arrest, the record reveals a genuine issue of material fact with respect to whether Cingular's hiring of Lynn Davis was negligent. Lynn Davis's employment application revealed the existence of a misuse of funds offense that occurred at a time and location that could not have shown up on the limited HireRight background check. A jury could reasonably find that, having obtained this information, an employer exercising due care would have executed a more thorough background check that at least included Scott County, Virginia. Alternatively, a jury could find that a reasonable employer would have followed up on the application by asking Lynn Davis additional questions about the offense. There is no evidence in the record that Cingular did either of these things.

Cingular argues repeatedly that no evidence shows that Lynn Davis obtained Hanes Davis's personal information through Lynn

Davis's employment with Cingular.  The court disagrees.  Lynn Davis was a Cingular employee with access to databases containing the personal information of Hanes Davis,[3] herself a former Cingular customer.  Lynn Davis used Hanes Davis's proprietary information, including her Social Security number, to set up a separate Cingular wireless account in the name of the fictitious Lisa Y. Davis.  When all reasonable inferences are taken in favor of Hanes Davis, as they must be on Cingular's motion for summary judgment, there is sufficient circumstantial evidence to conclude that Lynn Davis obtained the Social Security number through her employment with Cingular.  Thus, a reasonable jury could conclude that Cingular negligently hired Lynn Davis and that she obtained Hanes Davis's information through her employment with Cingular.  For these reasons, summary judgment is due to be denied with respect to the negligent hiring issue.  However, there is insufficient evidence in the record to support Hanes Davis's claims of negligent training or supervision, and evidence on these issues will not be admitted at trial.

*Breach of Contract*

Finally, Hanes Davis claims that Cingular breached the phone service contract executed between them.  Specifically, Hanes

---

[3] The record indicates that Lynn Davis may have had direct personal access to a database containing Hanes Davis's information, or that she may have used a fellow employee's log-in to access Hanes Davis's data.

Davis alleges that Cingular breached a fiduciary duty that allegedly arose from their contractual relationship.  In support of this claim, Hanes Davis notes only that ambiguous contract language is to be construed against the contract's author.  While this is true as a general rule of contract construction, Hanes Davis does not identify the allegedly ambiguous language.  In fact, Hanes Davis does not discuss any contractual language, nor does she identify any legal authority creating a fiduciary relationship between the parties.  There is no support in the record for a breach of any explicit contractual provision.  No contractual language specifically creates a fiduciary relationship, and this court knows of no case or statute that creates a fiduciary duty for cell phone service providers.  Therefore, with respect to the breach of contract claim, summary judgment is due to be granted.

*Conclusion*

For the reasons above, summary judgment will be GRANTED IN PART and DENIED IN PART by separate order.

DONE this 3rd day of July, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE